```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :   CRIMINAL ACTION
                                :
          v.                    :
                                :
JOSE REYES OCHOA                :   NO. 21-274-2
```

MEMORANDUM

Bartle, J.                                        March 31, 2025

Before the court are the pro se motions of defendant Jose Reyes Ochoa to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] He claims ineffective assistance of counsel.

I

On June 14, 2021, defendant, with co-defendant Eduardo Castelan-Prado and Rodrigo Rodriguez Gonzalez, a second co-conspirator who is now deceased, kidnapped seventeen-year-old J.S. at gunpoint. Ochoa traveled from California to New Jersey in May 2021, with Rodriguez Gonzalez joining on June 8, 2021. Over the following month, Ochoa, Castelan-Prado, and Rodriguez Gonzalez laid plans for the kidnapping of J.S. at a restaurant in Philadelphia where he worked. The co-conspirators surveilled the victim's home in Philadelphia, purchased and activated

---

1. Defendant filed two motions (Docs. # 120, 124), both of which contain the same content. The government filed a response in opposition to these two motions on February 18, 2025.

multiple GPS trackers, rented a van which was used to transport J.S. to an apartment in New Jersey, and purchased toiletries and an air mattress to be used by J.S. The co-conspirators purportedly targeted J.S. because his father, W.S., owed a drug debt to an unspecified Mexican cartel.

Our Court of Appeals summarized the facts of the kidnapping itself:

> J.S. went to the parking lot [of an Olive Garden in Philadelphia] at around 8:30 p.m. to put his tip money in his car. The masked defendants pulled J.S. out of his car and threw him inside their car. Castel[a]n-Prado and Gonzalez drove away with J.S. and Ochoa got into J.S.'s car and followed them. Ochoa abandoned J.S.'s car in an Acme parking lot five minutes away from the Olive Garden and then got back into the defendants' car. The defendants drove J.S. to New Jersey and transferred him into a white van that Castel[a]n-Prado had rented just days before the kidnapping. Eventually, they took J.S. out of the van and into Castel[a]n-Prado's apartment. They held J.S. hostage in this apartment until his eventual rescue.
>
> From the moment J.S. was kidnapped, the defendants made numerous ransom calls to his parents, demanding $500,000 for their son's release. Based on the ransom calls, the authorities traced the defendants' location and set up surveillance outside Castel[a]n-Prado's apartment.
>
> Federal agents conducted a rescue operation of J.S. on the morning of June 16. The agents stormed Castel[a]n-Prado's apartment, fatally shot Gonzalez (who was guarding J.S. with a firearm), and rescued J.S. Ochoa, an adult woman named Sonia Mabel Cabrera, and

>     Castel[a]n-Prado's 15-year-old son were also
>     in the apartment.  The agents found
>     Castel[a]n-Prado soon thereafter in a second
>     apartment in the same complex.  The evidence
>     recovered in the apartments included the
>     burner phones used to make the ransom calls
>     and a GPS tracker.  J.S.'s father would
>     later inform the agents that he found an
>     identical GPS tracker on the bottom of his
>     car.

United States v. Ochoa, No. 22-2968, 2024 WL 3059876, at *1 (3d Cir. June 20, 2024), cert. denied, 145 S. Ct. 401.

Before trial, the Government moved for an offer of proof and to preclude Ochoa's duress defense.  The court held a hearing on June 13, 2022 during which Ochoa's counsel made an offer of proof as to the evidence he would provide in support of his duress defense.  The court viewed the proffer in the light most favorable to the defendant.  See United States v. Paolello, 951 F.2d 53, 542 (3d Cir. 1991).

According to the proffer, Ochoa in 2018 borrowed $1,500 from Rodriguez Gonzalez, and to pay him back, Ochoa attempted to transport methamphetamine for him in California. He was arrested for this conduct and convicted in July 2020 for possession of 23 pounds of methamphetamine.  Shortly after his arrest and conviction, Ochoa's uncle was killed by the cartel. Ochoa failed to pay back his debt, and as a result, Rodriguez Gonzalez began threatening Ochoa.

In May 2021, Ochoa traveled from California to New Jersey and began living in Castelan-Prado's apartment. Rodriguez Gonzalez continued to threaten Ochoa over the phone, directing him to call W.S., the victim's father, and take pictures of his home. Rodriguez Gonzalez targeted W.S. because he owed that cartel a drug debt in connection to a "deal" he made for two kilograms of fentanyl or heroin in 2018. Ochoa told Rodriguez Gonzalez that he did not wish to be involved. However, Rodriguez Gonzalez came to Philadelphia on June 8, 2021. He continued to remind Ochoa that he could be killed by the cartel if he did not listen to Rodriguez Gonzalez.

Ochoa purportedly was not aware that Rodriguez Gonzalez planned to kidnap J.S. on the night of the kidnapping until they arrived at the Olive Garden in Philadelphia. According to Ochoa, he did not help to subdue the victim, and that Rodriguez Gonzalez was the one who brandished a gun during the kidnapping. It was proffered that Ochoa was not allowed to leave the apartment in New Jersey where the victim was being held or use his phone during that time.

The court, even accepting the offer of proof, found that defendant did not establish a defense of duress. Ochoa failed to show: (1) he faced an immediate threat of death or serious bodily harm; (2) he lacked a reasonable opportunity to escape; and (3) he did not recklessly place himself in a

-4-

position to be forced into committing the kidnapping. The court granted the Government's motion to preclude Ochoa from offering a defense of duress during the trial.

After a week-long trial, Ochoa was found guilty by a jury of one count of conspiracy to commit kidnapping under 18 U.S.C. § 1201(a)(1), (c), and (g), and one count of kidnapping under 18 U.S.C. § 1201(a)(1) and (g).

On October 18, 2022, this court sentenced Ochoa. His base offense level was 32. The base offense level was increased by six levels because a ransom demand had been made. Two more levels were added because of the use of a dangerous weapon and two more levels because the victim was vulnerable. His total offense level was 42. He had three criminal history points for a criminal history category of II. His advisory sentencing range was 360 months to life imprisonment. Since the victim was a minor and Ochoa was not a close relative, Ochoa faced a twenty-year mandatory minimum sentence under 18 U.S.C. § 1201(g).

At his sentencing, Ochoa argued that he had a minor role in the kidnapping and that the victim was not vulnerable. The court rejected his position and found that J.S. was vulnerable. At the sentencing hearing, the court stated:

> The court also finds that you knew or should
> have known that the victim was a vulnerable
> victim. I come to that conclusion not only

>because the victim was underage, seventeen years old. He testified here in the courtroom, it was clear he was not a robust young man and it was also very clear that he was severely traumatized emotionally and psychologically as a result of what occurred. He was kidnapped quite suddenly at night outside of the Olive Garden restaurant. He was placed with a hood, put in a vehicle and driven two hours up to Leonia, New Jersey and there was obviously noises about guns being racked.

The court imposed a sentence of 480 months of imprisonment on each count with the sentences to run concurrently. Defendant appealed, and our Court of Appeals affirmed his conviction and sentence. See Ochoa, 2024 WL 3059876. Defendant filed a petition for certiorari with the United States Supreme Court which was denied. Ochoa v. United States, 145 S. Ct. 401 (Oct. 15, 2024).

II

A motion under Section 2255 is a form of collateral attack identical in scope to federal habeas corpus. See Davis v. United States, 417 U.S. 333, 343 (1974); see also 28 U.S.C. § 2255. As noted above, defendant claims he suffered from ineffective assistance of counsel.

To establish ineffective assistance of counsel, petitioner must first demonstrate that his counsel's performance fell below "an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). To

demonstrate deficient performance, defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment." Id. at 687.

Defendant must also prove he was prejudiced by any objectively deficient performance by his counsel. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In assessing petitioner's ineffective assistance of counsel claims, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.

Counsel is given leeway to employ the strategy he or she considers most effective under the circumstances. See id. at 691. Ultimately, defendant must overcome the presumption that the actions of his counsel may be considered reasonable trial strategy. Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

### III

Ochoa first argues that counsel was deficient for failing to negotiate a formal plea offer. Ochoa avers that he was presented with an informal plea offer for a total of sixteen

years and that he was not adequately advised of the consequences of proceeding to trial due to the mandatory minimum sentence of twenty years on Count II. However, he states that the "authenticity and formal nature of this offer are uncertain."

A criminal defendant has right to effective assistance of counsel during the plea-bargaining process, that is counsel is required to provide competent advice when he or she presents a client with a formal plea offer. See, e.g., Lafler v. Cooper, 566 U.S. 156, 163 (2012). The Supreme Court has concluded that "[i]f no plea offer is made, . . . the issue [of ineffective assistance of counsel] raised here simply does not arise." Id. at 168.

Ochoa does not have a right to a plea bargain or to a formal plea offer. Weatherford v. Bursey, 429 U.S. 545, 560-61 (1977). It is within the prosecutor's discretion as to whether to offer a plea deal to a criminal defendant. When a defendant is not provided with a formal plea deal, he cannot claim that it was a result of his own counsel's ineffectiveness.

IV

Ochoa next argues that his counsel failed to present evidence challenging the credibility of the victim's father, W.S., who testified at the trial. This argument is without merit. Ochoa's counsel questioned W.S. about his prior convictions: a firearms conviction from 2013, a handgun

conviction from 2014, and an open sentencing from a drug dealing conviction in 2018. The court advised the jury that convictions could "be used only for a limited purpose in terms of his credibility in testifying here." Defense counsel reminded the court of W.S.'s criminal history during sentencing. As Ochoa's counsel referenced W.S.'s criminal history to challenge his credibility at trial and at sentencing, he was not ineffective for failing to do so.

V

Ochoa maintains that his counsel was ineffective for failing to present evidence to dispute that Ochoa intended to kidnap J.S. In support of his § 2255 motion, he states that he treated the victim "with kindness, ensuring he was well-fed and allowing [J.S.] to communicate with his parents, actions inconsistent with the conduct of someone knowingly involved in a criminal conspiracy with the intent to harm or exploit a minor."

He argues that his counsel should have sought to introduce a recording where J.S. calmly discussed with Ochoa W.S.'s "illicit business operation." Ochoa argues that it shows that J.S. was confident that Ochoa would "help him avoid harm." While the jury did not hear this specific recording, Ochoa's counsel still presented similar evidence at the trial through his cross-examination of J.S. J.S. testified that Ochoa never threatened him and that he never saw Ochoa with a gun.

-9-

The court will not second-guess the strategic conclusions of trial counsel. Strickland, 466 U.S. at 691. His decision directly question J.S. to show his state of mind during the kidnapping was not objectively unreasonable.[2] This claim of ineffective assistance of counsel fails.

VI

Finally, Ochoa asserts that his counsel was ineffective for failing to pursue a duress defense. Ochoa's argument fails. His counsel vigorously pursued this defense although the court ultimately rejected it after a hearing at which it accepted defense counsel's proffer in the light most favorable to Ochoa. His counsel also challenged the court's denial of his duress defense on appeal. Our Court of Appeals affirmed this court's decision to deny the duress defense. See Ochoa, 2024 WL 3059876, at *3.

VII

Next, Ochoa argues that his counsel was ineffective in not presenting evidence and in not arguing that Ochoa was unaware that the kidnapping victim was under eighteen years of age.

---

2. Ochoa also notes in his motion that this recording would have been relevant to show J.S.'s knowledge of his father's experience with the drug trade. Whether J.S. knew of his father's involvement is not relevant to Ochoa's intent to kidnap him.

At trial, J.S. and his mother testified that he was seventeen at the time of the offense.  The jury made a specific finding that J.S. was under eighteen years of age when the offenses occurred.  Section 1201(g) sets forth that the sentence of a person convicted of kidnapping shall be no less than twenty years if "the victim of the offense under this section has not attained the age of eighteen years" and is not a close relative of the convicted person.

Section 1201(g) does not require that the defendant knew or should have known that the victim was under eighteen years old at the time of the offense.  It is sufficient that the Government proves and the jury finds the fact of the victim's age.  Courts have reached the same result with respect to other criminal statutes which likewise have higher penalties when the victim is a minor.  See United States v. Hamilton, 456 F.2d 171, 173 (3d Cir. 1972) (per curiam), cert. denied, 406 U.S. 947; see also United States v. Pruitt, 763 F.2d 1256, 1262 (11th Cir. 1985), cert. denied, 474 U.S. 1084 (1986).

Additional evidence as to J.S.'s perceived age or size would not have affected the imposition of the mandatory minimum.  J.S. and his mother, as noted, both testified as to his age at trial.  Counsel cannot be deemed ineffective for failing to pursue a meritless claim.  Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

Although Ochoa argues that his counsel should have engaged in further discovery regarding victim's age, Ochoa presents no evidence that the victim had attained the age of eighteen at the time of the offenses. For these reasons, counsel was not ineffective with regard to litigating issues of the victim's age.

Ochoa also maintains that his counsel was ineffective for failing to challenge both before the trial court and on appeal the court's determination that J.S. was a vulnerable victim.

The Sentencing Guidelines provide that if "the defendant knew or should have known that a victim of the offense was a vulnerable victim," the offense level should be increased by two points. U.S. Sent'g Guidelines § 3A1.1(b)(1). The jury did not determine whether the victim was vulnerable. Rather, a sentencing court may find that a victim is vulnerable based on his or her "age, physical or mental condition, or [if he or she is] otherwise particularly susceptible to the criminal conduct." Id. at n.2.

At Ochoa's sentencing hearing, his counsel argued that J.S. should not be identified as a vulnerable victim. He emphasized that J.S. was not "that far below 18" and drove an expensive modified vehicle. The court disagreed and determined that the victim was vulnerable. As outlined above, the court

explained that because the victim not only was underage at the time of the kidnapping, but also was kidnapped at night, covered with a hood, placed in a vehicle and driven two hours to an apartment in northern New Jersey, heard a gun being racked, and was severely traumatized.  Counsel also raised this issue on appeal.  Our Court of Appeals affirmed the trial court's conclusion.  See Ochoa, 2024 WL 3059876, at *3.  Counsel was not ineffective on this issue.

VIII

Ochoa relies on United States v. Seibert, 971 F.3d 396 (3d Cir. 2020), to argue that it was impermissible double-counting for the court to impose a twenty-year mandatory minimum for J.S.'s age in addition to a two-point increase due to J.S.'s status as a vulnerable victim.  Impermissible double counting occurs when "a district court imposes two or more upward adjustments within the same Guideline range, when both are premised on the same conduct."  United States v. Reynos, 680 F.3d 283, 291 (3d Cir. 2012).  Adjustments are permissible if the Guidelines do not explicitly prohibit the simultaneous application of the provisions.  Id.

The twenty-year mandatory minimum is set forth in 18 U.S.C. § 1201(g), not the Guidelines.  The "vulnerable victim" offense level increase also addresses a separate harm: that a victim that is particularly vulnerable may be targeted.  Id. at

-13-

Case 2:21-cr-00274-HB   Document 128   Filed 03/31/25   Page 14 of 18

292. Finally, the Guidelines do not prohibit the simultaneous imposition of the twenty-year mandatory minimum in conjunction with § 3A1.1(b)(1) of the Guidelines. The imposition of both was not impermissible double-counting. Ochoa's counsel was not ineffective for failing to challenge it as such.

IX

Ochoa and his counsel had an ongoing fee dispute that he avers affected his representation. Ochoa retained Peter J. Scuderi on or about July 1, 2021. On November 7, 2022, the court ordered that Scuderi be appointed to represent Ochoa pursuant to § 210.30.30 of the Criminal Justice Amendment Guidelines (Doc. # 103). Scuderi represented Ochoa through trial and on direct appeal.

Ochoa first argues that he informed Scuderi prior to trial that he was unable to continue to pay for his services. However, Scuderi "attempted to dissuade him . . . from proceeding under Criminal Justice Act . . . ." Even assuming that this is true, Ochoa has not established that his counsel was ineffective at trial and therefore it did not affect his representation.

Scuderi contacted Ochoa's mother and spouse on multiple occasions. Ochoa argues this communication was a violation of Rule 4.2 of the Model Rules of Professional

Conduct.  The Pennsylvania Bar Association has adopted this rule, which states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa. R. Prof'l Conduct 4.2.  Ochoa's mother and spouse are not parties to Ochoa's litigation.  Thus Scuderi did not violate this rule through his communications with Ochoa's mother and spouse.

After Ochoa directed Scuderi to cease communication with his mother and spouse, he avers that Scuderi "ceased all further communication with Ochoa for the duration of the proceedings."  At that time, Ochoa's direct appeal was ongoing.  Rule 1.4(a) of the Pennsylvania Rules of Professional Conduct states that:

> A lawyer shall
> (1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter;
> (4) promptly comply with reasonable requests for information; and
> (5) consult with the client about any relevant limitation on the lawyer's

>      conduct when the lawyer knows that the
>      client expects assistance not permitted
>      by the Rules of Professional Conduct or
>      other law.
> (6)  A lawyer shall explain a matter to the
>      extent reasonably necessary to permit
>      the client to make informed decisions
>      regarding the representation.

Ochoa fails to identify any prejudice that he suffered for this lack of communication. Although he avers that he was "excluded from meaningful participation in his case," he does not identify any specific instances where Scuderi ignored his communication. Our Court of Appeals rendered its decision on April 18, 2024, and Ochoa recognizes that he was informed of the decision on June 2, 2024, approximately six weeks after it was made. Ochoa notes that he was unaware that his counsel filed a petition for certiorari, although he does not aver that such filing was improper.

As outlined above, the court has considered his substantive concerns regarding his representation and found that Ochoa's counsel addressed all of Ochoa's concerns and pursued these arguments through his appeal. Ochoa fails to prove by a preponderance of the evidence that his counsel was ineffective.

X

Although Ochoa does not mention status points in his brief in support of his motion, he notes in his form motion under 28 U.S.C. § 2255 that he planned to raise the issue of

-16-

"Amendment 821 status point assessments."  The court will address this issue.

Part A of Amendment 821 to the Sentencing Guidelines concerns the imposition of additional criminal history points when defendant commits the instant offenses while on "any criminal justice sentence," including probation.  The Guidelines currently provide that a sentencing court must:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S. Sent'g Guidelines § 4A1.1(e) (2024).  When Ochoa was sentenced, the Guidelines directed a sentencing court to add two points to the defendant's criminal history total where the offense was committed while under any criminal justice sentence. See U.S. Sent'g Guidelines § 4A1.1(d) (2021).

Ochoa, as noted, committed his offenses while on probation.  At the time of sentencing, two criminal history points were added due to his probationary status for a total of three criminal history points.  Now, as a result of Amendment 821, he would not receive any additional status points for being on probation at the time of the offense as he had only one and thus less than seven criminal history points.  Such reduced score places defendant in criminal history category I, rather

than criminal history category II. His total offense level under the Guidelines was 42. Whether in criminal history category I or criminal history category II, his sentencing guideline range is the same: 360 months to life imprisonment. See U.S. Sent'g Guidelines § 5A (sentencing table) (2024). A reduction is not appropriate if an amendment does not lower the defendant's applicable guideline range. Id. at § 1B1.10(a)(2)(B). Thus, any failure of Ochoa's counsel to pursue this issue on appeal is irrelevant because it would not reduce his sentence.

XI

Finally, Ochoa requests that an evidentiary hearing be held on his claims for relief. When a petition alleges facts that warrant relief and are not "clearly resolved by the record," the court has the discretion to hold an evidentiary hearing. United States v. Tolliver, 800 F.3d 138, 131 (3d Cir. 2015). Here, his allegations are clearly resolved by the record. An evidentiary hearing is not necessary.

Ochoa has failed to make a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2). As he fails to do so, a certificate of appealability shall not issue.